# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Viracon, Inc.,

                Plaintiff,

                                    Civ. No. 12-2566 (RHK/JJK)
                                    **MEMORANDUM OPINION**
                                    **AND ORDER**

v.

J&L Curtain Wall LLC d/b/a J&L
Curtainwall, LLC, *et al.*,

                Defendants.

Richard G. Morgan, Michael R. Carey, Bowman and Brooke LLP, Minneapolis, Minnesota, for Plaintiff.

Steven R. Lindemann, Curtis D. Ripley, Leonard, Street and Deinard, PA, Minneapolis, Minnesota, for Defendants.

## INTRODUCTION

Plaintiff Viracon, Inc. ("Viracon") is a Minnesota-based fabricator of architectural glass. In early 2009, a New York-based company, Defendant J&L Curtain Wall LLC ("J&L"), agreed to purchase over $1 million worth of Insulated Glass Units ("IGUs")[1] from Viracon for use in the construction of a hotel in upstate New York.[2] When J&L

---

[1] An IGU is a double- or triple-paned window, with the panes separated by air or some other gas. See http://en.wikipedia.org/wiki/Insulated_glazing (last visited March 7, 2013).

[2] Viracon alleges that J&L agreed to purchase the IGUs as "an agent" for Defendant Cappelli Enterprises, Inc. ("Cappelli"), J&L's New York-based parent. (Compl. ¶ 1.) It further alleges that J&L is "merely an instrumentality or alter ego of Cappelli" and it refers to J&L and Cappelli jointly as the "Cappelli Parties" (id. ¶¶ 1, 4; Mem. in Opp'n at 33). Accordingly, and for ease of reference, the Court refers to Defendants (and their agents/employees) collectively as "J&L."

failed to pay for the IGUs, Viracon commenced the instant action; J&L now moves to dismiss for lack of personal jurisdiction and improper venue. For the reasons that follow, the Court concludes that it lacks personal jurisdiction over J&L and, accordingly, it will dismiss this action without prejudice.

**BACKGROUND**

The relevant facts are straightforward. J&L is a New York limited liability company that "specializes in building exterior curtain walls[3] to be used in construction projects." (Cappelli Decl. ¶ 12.)[4] It is headquartered in Valhalla, New York, and its primary business operations are in and around New York state. (Id. ¶¶ 12, 14.) It is not registered to do business in Minnesota; has no offices in this state; owns no Minnesota property; has no registered agents here; and has never paid Minnesota taxes. (Id. ¶ 14.)

In 2008, J&L was retained to build the curtain wall at the "Concord Project," a hotel and casino development project in upstate New York. (Compl. ¶ 8; Cappelli Decl. ¶ 4.) In response to a solicitation it had received from Viracon, on December 11, 2008, J&L faxed from its New York headquarters a "letter of intent" to purchase IGUs from Viracon for use at the Concord Project. (Simon Decl. ¶ 4 & Ex. A.) The letter specified that the IGUs, which were to be manufactured at Viracon's Minnesota factory in

---

[3] A "curtain wall" is a building facade that does not support the building's roof, but rather simply keeps weather out and occupants in. See http://www.wisegeek.com/what-is-a-curtain-wall.htm (last visited March 7, 2013). Because curtain walls are not load bearing, they are often made of glass to allow significant amounts of natural light to enter a building. Id.

[4] When reviewing a motion to dismiss for lack of personal jurisdiction, the Court may consider matters beyond the pleadings, such as Cappelli's Declaration. E.g., Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998).

- 2 -

accordance with J&L's specifications, were to be shipped to a J&L warehouse in Pennsylvania. (Id. Ex. A.)

Because the IGUs were to be shipped before Viracon received payment, it required J&L to submit a credit application. On December 17, 2008, J&L faxed that application to Viracon, providing information about its assets, equity, debts, and liabilities. (Id.) The application listed several "trade references," one of which was a company located in Minnesota from which J&L previously had purchased products. (Id.; Second Cappelli Decl. ¶¶ 4-5.)

Viracon approved J&L's application, and on December 23, 2008, J&L faxed Viracon a purchase order for several thousand IGUs, at a total cost of approximately $1.5 million, to be delivered to J&L's Pennsylvania warehouse over the course of several weeks in early 2009. (Simon Decl. ¶ 8 & Ex. D.) The following day, Viracon faxed back an "order confirmation," confirming the purchase and incorporating its standard "terms of sale" into the transaction. (Id. ¶ 9 & Ex. E.) Among other things, those terms provided that (1) completed but unshipped orders were "subject to storage charges" by Viracon, (2) J&L could "arrange to inspect" the IGUs at Viracon's factory before shipment, and (3) Minnesota law would govern the transaction. (Id. Ex. G.)[5]

Viracon then began manufacturing the IGUs and shipping them to J&L's Pennsylvania warehouse. Between February and May 2009, it shipped 16 separate lots of

---

[5] The parties twice revised the purchase order. The first revision was minor, but the second, in March 2009, changed the total number of IGUs purchased by J&L, resulting in the amount due to Viracon falling from $1.5 million to slightly more than $1 million. (Simon Decl. ¶¶ 11-12 & Exs. H-I.) With each revision, Viracon faxed J&L an order confirmation incorporating its standard terms of sale. (Id.)

IGUs for which it billed J&L approximately $960,000.  (Id. ¶ 14 & Ex. J.)  J&L accepted all of the IGUs and never informed Viracon they were unacceptable or failed to meet its specifications; however, it did not pay for them.  (Id. ¶ 15.)  Viracon later manufactured the remaining IGUs in J&L's order, but because it had not been paid, it stored them in a Minnesota warehouse rather than shipping them to Pennsylvania.  (Id. ¶¶ 21, 23.)

In September 2009, Viracon sent J&L an e-mail about its outstanding balance, and J&L responded that the Concord Project had "experienced a delay in obtaining construction financing," but the financing was due to be completed shortly and it hoped to clear its outstanding debt to Viracon "within the next 3 weeks."  (Id. Ex. K.)  When a month passed without payment, Viracon again e-mailed J&L and asked that at least some portion of the outstanding balance be paid.  (Id. Ex. L.)  J&L responded that it was "not in a position to make a payment at [the] time," and it requested that Viracon continue to carry the outstanding balance until the expected financing was completed, which was supposedly "close" to occurring.  (Id.)  But "close" turned out to be an inaccurate description – more than a year passed without payment by J&L.  During that time, Viracon e-mailed or telephoned J&L from time to time, reminding it of its outstanding balance.  (Id. Ex. M.)  Ultimately, financing for the Concord Project was never completed, and J&L failed to pay Viracon for the IGUs.  (Cappelli Decl. ¶ 8.)

In 2011, "[s]everal parties, including Viracon, filed claims in New York state court" against the contractors involved in the Concord Project, including J&L, to recover damages "for materials that they [had] provided" on the project.  (Id. ¶ 10.)  Of particular relevance here, Viracon asserted claims against J&L due to its non-payment for the IGUs.

- 4 -

But in April 2012, rather than continuing to litigate in New York, Viracon voluntarily dismissed its claims. (Compl. ¶ 6; Carey Decl. ¶ 2.) It then filed the instant action in the Steele County, Minnesota District Court, asserting a host of contract and tort claims against J&L. J&L removed the action to this Court on diversity grounds and now moves to dismiss, *inter alia*, under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.[6] The Motion has been fully briefed and is now ripe for disposition.

**STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(2), a plaintiff must make a *prima facie* showing that personal jurisdiction exists. E.g., Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006); Lakin v. Prudential Sec., Inc., 348 F.3d 704, 706 n.3 (8th Cir. 2003). It can do so by proffering sufficient evidence "to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the [forum] state." K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011) (internal quotation marks and citation omitted). The plaintiff's "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." Id. at 592 (internal quotation marks and citations omitted). And where the Court has not held an evidentiary hearing (which no party has requested here), the evidence must be viewed in the light most favorable to the plaintiff. E.g., Pangaea, Inc.

---

[6] Although not mentioned in its Motion, J&L argues in its brief that the Court should transfer this action to the United States District Court for the Southern District of New York if it declines to dismiss the case. The Court does not reach that alternative request, as it concludes that this action must be dismissed for lack of personal jurisdiction.

v. Flying Burrito LLC, 647 F.3d 741, 745 (8th Cir. 2011); Digi-Tel Holdings, Inc. v. Pro-Teq Telecomms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996).

To determine whether Viracon has discharged its burden, the Court must ask two questions. First, has Minnesota's long-arm statute been satisfied? Second, would exercising jurisdiction comport with the Due Process Clause of the Fourteenth Amendment? E.g., Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 613 (8th Cir. 1998); Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co., 63 F.3d 694, 696-97 (8th Cir. 1995). These two inquiries collapse into one, however, because Minnesota's long-arm statute extends jurisdiction to the outer limits of the Due Process Clause. E.g., Guinness, 153 F.3d at 614; Marquette Nat'l Bank of Minneapolis v. Norris, 270 N.W.2d 290, 294 (Minn. 1978).[7]

Due process requires that a defendant have sufficient "minimum contacts with [Minnesota] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted); accord, e.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980). "The central question" is whether the defendant "has purposefully availed itself of the privilege of conducting activities in [Minnesota] and should, therefore, reasonably anticipate being haled into court [here]." Pecoraro v. Sky Ranch for

---

[7] As this is a diversity case, the Minnesota Supreme Court's interpretation of Minnesota's long-arm statute is controlling. See, e.g., Myers v. Casino Queen, Inc., 689 F.3d 904, 909 (8th Cir. 2012) ("[T]he reach of a state's long-arm statute is a matter of state law, and federal courts are required to accept the interpretation given the statute by the state supreme court.") (internal quotation marks and citation omitted). The Minnesota Supreme Court, however, has interpreted the long-arm statute, Minn. Stat. § 543.19, to reach as far as due process will allow. See Marquette Nat'l Bank, 270 N.W.2d at 294 ("[T]he statutory and constitutional requirements for exercise of personal jurisdiction are coextensive.").

Boys, Inc., 340 F.3d 558, 562 (8th Cir. 2003) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

There are no "talismanic formulas to personal jurisdiction." Clune v. Alimak AB, 233 F.3d 538, 542 (8th Cir. 2000). Nevertheless, the Eighth Circuit has instructed district courts to consider five factors when determining whether jurisdiction exists: (1) the nature and quality of the defendant's contacts with the forum; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the forum state's interest in providing a forum for the plaintiff; and (5) the convenience of the parties. Pecoraro, 340 F.3d at 562 (citation omitted). The Minnesota Supreme Court has adopted the same five-factor test. E.g., Dent-Air, Inc. v. Beech Mountain Air Serv., Inc., 332 N.W.2d 904, 907 (Minn. 1983). The first three factors are of primary importance, while the last two factors are considered secondary. Pecoraro, 340 F.3d at 562; Dent-Air, 332 N.W.2d at 907.[8]

## ANALYSIS

**I.  Viracon has not established personal jurisdiction under the five-factor test.**

Having carefully considered the factors set forth above, the Court has little trouble concluding that personal jurisdiction over J&L is absent here. The nature, quality, and quantity of its contacts with Minnesota are paltry; Viracon has done little more than

---

[8] The third factor distinguishes general from specific jurisdiction. Specific jurisdiction exists over causes of action arising out of or related to a defendant's contacts with the forum state, while general jurisdiction is broader and reaches *any* cause of action against a defendant whose forum contacts "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, __ U.S. __, 131 S. Ct. 2846, 2851 (2011) (citation omitted).

establish that J&L entered into a contract for the purchase of goods from a Minnesota company, which were to be delivered out of state. Yet, it has long been recognized that a "contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state." K-V Pharm., 648 F.3d at 593 (citing Burger King, 471 U.S. at 478-79); accord, e.g., Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 655 (8th Cir. 1982); see also S.B. Schmidt Paper Co. v. A to Z Paper Co., 452 N.W.2d 485, 487 (Minn. Ct. App. 1990) (long-arm jurisdiction "should not be such that anyone who deals with a Minnesota resident in any way . . . can be brought into the Minnesota courts to respond to a suit"). This is "particularly true" where, as here, "the nonresident defendant is a buyer, rather than a seller," meaning no goods were delivered into the forum. Bell Paper Box, Inc. v. Trans W. Polymers, Inc., 53 F.3d 920, 922 (8th Cir. 1995); accord, e.g., Precision Constr. Co. v. J.A. Slattery Co., 765 F.2d 114, 118 (8th Cir. 1985) ("[T]his court has in the past recognized that due process would be more easily established over a nonresident seller shipping goods into the forum state as contrasted with a nonresident buyer."); Bellboy Seaford Corp. v. Kent Trading Corp., 484 N.W.2d 796, 796-97 (Minn. 1992).

Furthermore, the record contains no evidence suggesting that the parties contemplated their relationship would extend over a substantial period of time. Cf. K-V Pharm., 648 F.3d at 595-96 (finding personal jurisdiction where defendant "had a long-term product-development contract that would require [it] to have a continuing relationship with" the plaintiff in the forum state). Rather, the relationship comprised a one-time purchase of architectural glass for a lone construction project located outside the

state of Minnesota. This does not evidence a "deliberate and substantial connection with [Minnesota] such that [J&L] could reasonably anticipate being haled into court [here]." Id. at 596; accord, e.g., Bell Paper Box, 53 F.3d at 922-23 (contract between South Dakota plaintiff and California defendant for purchase of cartons, which called for cartons' manufacture in South Dakota and payment to be sent there, insufficient to establish personal jurisdiction in South Dakota); Mountaire Feeds, 677 F.2d at 655-56 (agreement to purchase products from Minnesota company and send payment for those products to Minnesota insufficient); Bellboy Seafood, 484 N.W.2d at 796-97 (same).

All of Viracon's arguments to the contrary are unavailing. It points out, for example, that the parties communicated many times by telephone, e-mail, and fax, over many months, regarding J&L's purchase and its failure to pay. (Mem. in Opp'n at 17-20.) Yet, "contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause." Woodcock, 444 F.3d at 956; accord, e.g., Porter v. Berall, 293 F.3d 1073, 1076 (8th Cir. 2002) (same); Digi-Tel, 89 F.3d at 523 (exchange of "dozens of letters and faxes" between parties insufficient to establish jurisdiction). Simply put, these contacts add little to the jurisdictional mix.

Viracon also points out that its standard terms of sale, which were incorporated into the parties' purchase orders, contain a Minnesota choice-of-law clause. (Mem. in Opp'n at 21-22.) The clause was boilerplate and certainly does not appear to have been "bargained for," as Viracon contends. (Id.) But in any event, "[a]lthough relevant to the jurisdictional question," a choice-of-law clause is "insufficient to confer jurisdiction without other 'deliberate affiliation' with the forum" that is absent here, Bell Paper Box,

- 9 -

53 F.3d at 923, "particularly where . . . the clause [is] part of a . . . standard . . . form," S.B. Schmidt, 452 N.W.2d at 489; see also Bellboy Seafood, 484 N.W.2d at 797 (no personal jurisdiction despite Minnesota choice-of-law clause in contract at issue).[9] Had Viracon wanted to ensure jurisdiction over J&L in Minnesota, it could have included a mandatory Minnesota *forum-selection* clause in its standard terms of sale. The absence of such a clause is telling. Equally telling is the New York action, where Viracon first sued J&L but later dismissed its claims. That Viracon initially filed suit in New York and not Minnesota suggests that it, too, realizes personal jurisdiction is lacking here.

Viracon next argues that J&L "sought out Viracon" to purchase the IGUs. (Mem. in Opp'n at 20.) True, Minnesota courts have recognized that "[t]he crucial factor in determining whether the defendant availed itself of jurisdiction is the nonresident defendant's effort to initiate or induce the transaction." Prisma Int'l, Inc. v. A.J. Office Furniture Co., No. C1-97-1943, 1998 WL 297530, at *3 (Minn. Ct. App. June 9, 1998); accord, e.g., Dent-Air, 332 N.W.2d at 907 (nonresident defendant submits to jurisdiction by being the "aggressor" and soliciting, advertising, and initiating business with in-state resident). But Viracon's argument rings hollow in light of its acknowledgement that J&L offered to purchase the IGUs only "in response to a quotation previously sent by Viracon." (Simon Decl. ¶ 4.) In other words, it appears that *Viracon* was the "aggressor" in the transaction, not J&L.

---

[9] Viracon contends that J&L also "expressly bargained for the right to visit Viracon's Minnesota based manufacturing facility to inspect the [IGUs it] ordered from Viracon." (Mem. in Opp'n at 20.) But this "right," like the choice-of-law clause, was contained in boilerplate in the standard terms of sale, and nothing in the record indicates it was "expressly bargained for" by J&L. Nor is there any suggestion that J&L actually availed itself of this "right."

Viracon also argues that J&L "ha[s] opted to store IGUs with Viracon at its facilities in Owatonna, Minnesota," referring to the manufactured but unshipped IGUs J&L agreed to purchase. (Mem. in Opp'n at 22-23.) This assertion is particularly disingenuous, because it was *Viracon* that opted to store the IGUs here, not J&L. (Simon Decl. ¶ 23.) J&L simply cannot be subject to jurisdiction in this state because of Viracon's conduct. "[I]t is essential in each case that there be some act by which *the defendant* purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," Hanson v. Denckla, 357 U.S. 235, 253 (1958) (emphasis added), and thus a defendant "will not be haled into a jurisdiction solely as a result of . . . *the unilateral activity of another party*," Burger King, 471 U.S. at 475 (emphasis added).

At bottom, the three "primary" jurisdictional factors – the nature, quantity, and quality of J&L's contacts with Minnesota and the relation of those contacts to Viracon's claims – do not support the exercise of personal jurisdiction. And the two "secondary" factors, Minnesota's interest and the convenience of the parties, do not alter that conclusion. Minnesota undoubtedly has an interest in providing a forum for one of its residents (Viracon), but that interest is minimal in this case, "a dispute that has no [real] connection to" this state. Westley v. Mann, Civ. No. 11-3704, 2012 WL 4090515, at *14 (D. Minn. Sept. 14, 2012) (Ericksen, J., adopting Report & Recommendation of Mayeron, M.J.). And the remaining factor, party convenience, is in equipoise: litigating

here would be more convenient for Viracon, while litigating in New York would be more convenient for J&L.[10]

## II. The "Calder effects test" does not aid Viracon's cause.

Perhaps recognizing that it cannot satisfy the five-factor test for personal jurisdiction, Viracon falls back on the "Calder effects test" to support its argument. (Mem. in Opp'n at 28-29.) Emanating from Calder v. Jones, 465 U.S. 783 (1984), this test provides that "a defendant's tortious acts can serve as a source of personal jurisdiction . . . where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered – and which the defendant knew was likely to be suffered – [in the forum state]." Johnson v. Arden, 614 F.3d 785, 796 (8th Cir. 2010) (citation omitted). Pointing to its claims for conversion and civil theft, Viracon attempts to invoke the Calder effects test here; there are at least two problems with its argument.

---

[10] Viracon argues that J&L's credit application (showing the company had previously purchased products from another entity located in Minnesota), when combined with the transaction in question here, demonstrate that J&L has a "history . . . of doing business in Minnesota" sufficient to subject it to *general* jurisdiction. (Mem. in Opp'n at 24.) The Court cannot agree. General jurisdiction requires a plaintiff to show the defendant's contacts with the forum state were "so 'continuous and systematic' as to render [it] essentially at home" there. Goodyear Dunlop Tires Operations, S.A. v. Brown, __ U.S. __, 131 S. Ct. 2846, 2851 (2011) (citation omitted). "[M]ere purchases [made in the forum state], *even if occurring at regular intervals*, are not enough to warrant a State's assertion of [general] jurisdiction over a nonresident corporation." Id. at 2856 (emphasis added) (citations omitted). Moreover, the Eighth Circuit has found general jurisdiction lacking in cases with far greater forum contacts than present in this case. See, e.g., Woodcock, 444 F.3d at 954-57. Even if J&L previously purchased goods from another Minnesota company, nothing suggests that its contacts with Minnesota have been "so 'continuous and systematic' as to render [it] essentially at home" here. Goodyear, 131 S. Ct. at 2851 (citation omitted).

First, while Calder has been described as an "effects" test, "more than mere effects" supported that holding. Hicklin Eng'g, Inc. v. Aidco, Inc., 959 F.2d 738, 739 (8th Cir.1992) (*per curiam*) (even when intentional tort is alleged and defendant knows a resident plaintiff will be affected, "more than mere effects" are necessary "to bestow personal jurisdiction"). To invoke Calder, a plaintiff must show the defendant's acts were "performed for the very purpose of having their consequences felt in the forum state." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1390-91 (8th Cir. 1991) (citation omitted). In other words, the challenged conduct must be "uniquely aimed at the forum state," id. at 1391, which requires more than knowledge that a Minnesota company will suffer consequences from the conduct. See, e.g., Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., 646 F.3d 589, 594-95 (8th Cir. 2011) (failure to pay in-state plaintiff "was not uniquely or expressly aimed at the forum state or performed for the very purpose of having [its] consequences felt in the forum state") (internal quotation marks and citations omitted); Superior Edge, Inc. v. Maricopa Cnty. Cmty. Coll. Dist., 509 F. Supp. 2d 786, 793-94 (D. Minn. 2007) (Ericksen, J.). This is all Viracon has proffered here. (See Mem. in Opp'n at 29 (J&L "understood Viracon was a Minnesota-based company" and hence "knew [its] tortious conduct would affect Viracon in Minnesota").) "[A]bsent additional contacts, mere effects in [Minnesota] are insufficient to confer personal jurisdiction" over J&L. Arden, 614 F.3d at 797.

Second, in the Court's view this is quintessentially a breach-of-contract case, not a tort case. Indeed, as Viracon itself notes, "[t]his case is essentially a collection action." (Mem. in Opp'n at 26.) Although Viracon alleges that J&L's conduct constituted theft

- 13 -

and conversion, the Court does not believe it can plead its way into personal jurisdiction over J&L by sprinkling tort theories onto a Complaint that, at its core, sounds in breach of contract. See Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997) (plaintiff could not plead around forum-selection clause in contract by asserting only tort claims; "We think it is clear that Terra's tort claims involve the same operative facts as would a parallel claim for breach of contract. Admittedly, Terra did not raise any claims for breach of contract in its complaint. Strategic or artfully drawn pleadings, however, will not work to circumvent an otherwise applicable forum selection clause. Although we recognize that Terra's claims are alleged as tort claims, Terra plainly could have asserted a parallel claim for breach of contract in the same complaint.").

### III.  Jurisdictional discovery is unwarranted.

For the foregoing reasons, the Court determines that it lacks personal jurisdiction over J&L. That leaves one final matter: Viracon's request for jurisdictional discovery. (Mem. in Opp'n at 37-39.) The Court does not believe discovery would be appropriate under the circumstances here.

To be sure, a plaintiff may be entitled to "specifically targeted" jurisdictional discovery, designed to "flesh out connections [with the forum state] already shown to exist." BioFuels Automation, Inc. v. Kiewit Energy Co., Civ. No. 10-610, 2010 WL 3023391, at *2 (D. Minn. July 28, 2010) (Doty, J.) (internal quotation marks and citation omitted). But when a plaintiff requests discovery simply "to cast a wide net for potential contacts with the forum state," its request should be denied. Id. Here, most of Viracon's proposed discovery focuses on the relationship between J&L and Cappelli (see Mem. in

Opp'n at 38), apparently to show that each company's contacts should be imputed to the other as agents/alter egos of one another. But the Court has already considered *all* of their contacts *in the aggregate* and still found jurisdiction lacking over each Defendant. Additional discovery regarding the relationship between the Defendants, therefore, would do nothing to alter the Court's conclusion. The remaining requests seek discovery as to "[w]hat Minnesota entities or individuals, *if any*," J&L has conducted business with. (Id. (emphasis added).) But Viracon is merely speculating that such contacts may exist, which will not suffice. See Viasystems, 646 F.3d at 598; Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1074 n.1 (8th Cir. 2004).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. No. 8) is **GRANTED IN PART**, and Viracon's Complaint (attached to Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.[11]

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: March 8, 2013         s/Richard H. Kyle
                             RICHARD H. KYLE
                             United States District Judge

---

[11] Over forty years ago, the Eighth Circuit noted that "where a plaintiff seriously intends to press his claim, a . . . dismissal [for lack of personal jurisdiction] should occur only under exceptional circumstances. The usual answer should be a venue transfer, rather than a dismissal." Thompson v. Ecological Sci. Corp., 421 F.2d 467, 470 n.4 (8th Cir. 1970). Yet, it has routinely affirmed the dismissal of cases for lack of personal jurisdiction without any discussion of transfer. See, e.g., Viasystems, 646 F.3d at 598; Arden, 614 F.3d at 795-98; Epps v. Steward Info. Servs. Corp., 327 F.3d 642, 650-51 (8th Cir. 2003); Hicklin Eng'g, 959 F.2d at 739. While the Court may transfer this action notwithstanding the lack of personal jurisdiction over J&L, 28 U.S.C. § 1631, it perceives no compelling reason to do so. Accordingly, it will dismiss this case.